PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA  92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE CANTU, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SUNRUN INC., a Delaware corporation d/b/a WWW.SUNRUN.COM,<br><br>Defendant. | Case No. **'23CV0974 JO    AHG**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE VIDEO PROTECTION PRIVACY ACT** |

# I. INTRODUCTION

Whenever someone watches a video on www.sunrun.com (the "Website"), Defendant secretly reports all the details to Google: the visitor's personally identifiable information ("PII"), the titles watched, and more. In sum, each video is a "digital trojan horse" that Defendant uses to secretly collect PII, build profitable targeted advertising databases, and bombard viewers with unwanted advertising.

As shown below, Defendant's actions violate the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"). As such, Defendant is liable to each class member for $2,500 and related relief.

# II. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the VPPA, a federal law.

2. Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the acts and events giving rise to the class claims occurred in this District. Plaintiff and many Class members reside in this District.

3. Defendant is subject to personal jurisdiction because the exercise of jurisdiction over Defendant is not "inconsistent with the Constitution of this state or the United States." Indeed, Plaintiff believes that Defendant generates a minimum of eight percent of its online revenues based upon its website interactions with Californians (including operating as a "gateway" to retail sales) such that the website "is the equivalent of a physical store in California." Since this case involves illegal conduct emanating from Defendant's operation of its website targeting Californians, this court can "properly exercise personal jurisdiction" over the Defendant in accordance with the Court of Appeal opinion in *Thurston v. Fairfield Collectibles of Georgia*, 53 Cal.App.5th 1231 (2020).

## III. PARTIES

4. Plaintiff is a resident of California. Plaintiff watched a video titled ***"SunRun Stories – The Carrion Family"*** in 2023 on Defendant's website at the link https://www.sunrun.com/stories/carrion-family.

5. Defendant is a provider of photovoltaic systems and battery energy storage products, primarily for residential customers. Defendant also owns, operates, and/or controls the Website and offers multiple videos for consumers to view and play through the Website. The Website is widely available throughout the United States and in this District.

## IV. FACTUAL ALLEGATIONS

**A. GOOGLE ANALYTICS**

6. Google Analytics is part of the Google Marketing Platform and is available for free to anyone with a Google account. There are two commonly used versions of Google Analytics: Google Analytics 3 (Universal Analytics) and Google Analytics 4 (GA4). Universal Analytics is the legacy version of Google Analytics and is slowly being phased out.[1] GA4 is the latest version of Google Analytics that was launched in 2020.[2] The tools are materially similar in how they collect and transmit website analytics data to Google.[3]

7. Google Analytics acquires user data from each website visitor using one or more tracking tags installed on the website. A tracking tag is a small piece of JavaScript code that the website owner inserts into the existing code of each page. The Google Analytics tracking tags run in the web browser of each visitor, collecting data and sending it to Google's data collection points.

---

[1] ABOUT UNIVERSAL ANALYTICS, https://support.google.com/analytics/answer/2790010?hl=en (last visited May 2023).
[2] [GA4] INTRODUCING THE NEXT GENERATION OF ANALYTICS, GOOGLE ANALYTICS 4, https://support.google.com/analytics/answer/10089681?hl=en (last visited May 2023).
[3] UNIVERSAL ANALYTICS VERSUS GOOGLE ANALYTICS 4 DATA, https://support.google.com/analytics/answer/9964640?hl=en&ref_topic=12153646,1215 3943,2986333,&visit_id=638115536489543614-1150820823&rd=1#zippy=%2Cin-this-article (last visited May 2023).

8.   Website owners control what data the Google Analytics tracking tag will collect, including the website's metadata, along with what pages a visitor views.

9.   Website owners control how the Google Analytics tracking tag identifies visitors. The Google Analytics tracking tag is configured to collect "HTTP Headers" and "Event Parameter" data. HTTP headers include data such as IP Address, User Agent String, and Language. HTTP headers are sent to Google from the web browser with every Google Analytics event that is tracked. Event Parameters vary based on the type of event and may include data such as web form interactions, video views, file downloads, page scrolls, web searches, etc.[4]

10.  Google Analytics can generate customizable reports to track and visualize data such as the number of users, bounce rates, average session durations, sessions by channel, page views, conversions (such as purchases and adding products to carts), and more. Google Analytics is "designed to work together" with other Google Marketing Platform products to help measure, understand and enhance a website's digital marketing.[5] For example, website owners can easily export data from Google Analytics to Google Marketing products to generate audience segments to facilitate targeted advertising.

**B.   WWW.SUNRUN.COM AND GOOGLE ANALYTICS**

11.  Defendant is substantially involved in the conveyance of video content to consumers via its website. Indeed, the video content it provides to consumers is specifically and significantly tailored to serve a core purpose of Defendant's business – i.e., the purpose of promoting brand awareness of Defendant's products and utilizing such videos to lead directly to the sale of such products. In other words, Defendant's use of website videos is an integral part of promoting Defendant's business, and the creation, editing, and distribution of such videos is a significant part of Defendant's core business operations.

---

[4]   [GA4] ENHANCED EVENT MEASUREMENT, https://support.google.com/analytics/answer/9216061 (last visited May 2023).
[5]   GOOGLE MARKETING PLATFORM, ABOUT GOOGLE ANALYTICS, https://marketingplatform.google.com/about/analytics/ (last visited May 2023).

12. Plaintiff has a Google account and watched a video titled ***"SunRun Stories – The Carrion Family"*** on the website. Defendants disclosed information that allows Google (and any ordinary person) to readily identify Plaintiff's video-watching behavior, as shown by the below examplar of the information Defendant transmits to Google when someone watches a video on the website:

**Figure 1**



13. Whenever the video is played, Defendant sends data to Google that logs detailed information about the video view. As shown above, that data includes the page title and URL, video title and URL, and the _gid cookie.

14. The _gid cookie submitted is a unique personal identification number for Google accounts. This data is stored and readily accessible by the Defendant's website.

**Figure 2**

| Name | Value | Domain |
|---|---|---|
| _gid | GA1.2.1313804839.1684168178 | .sunrun.com |

15. The _gid cookie stored from the website on the browser matches the _gid submitted to Google.

16. Defendant's actions readily permit an ordinary person to identify Plaintiff's video-watching behavior – ***indeed, Defendant informs Google of the title of the video watched, along with PII that links the title to each consumer***. Google then disseminates that information virally so that any interested party will know what videos a class member watched on the website.

## C.  EXPERIENCE OF PLAINTIFF

17. Plaintiff has downloaded the "MySunRun" app onto Plaintiff's smart phone. As such, Plaintiff is a "subscriber" and therefore a "consumer" under the VPPA.

18. Plaintiff is a consumer privacy advocate with dual motivations for playing videos on Defendant' Website. First, Plaintiff is genuinely interested in learning more about the goods and services offered by Defendant. Second, Plaintiff is a "tester" who works to ensure that companies abide by the privacy obligations imposed by federal law. As a consumer who advance important public interests at the risk of vile personal attacks, Plaintiff should be "praised rather than vilified." *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 954 (7th Cir. 2006).

19. In enacting the VPAA, Congress intentionally chose to extend its protections to all persons who watch videos, not simply those who purchase them or claim pecuniary loss. As such, statutes like the VPPA are largely enforced by civic-minded "testers" such as Plaintiff. *See Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109 (9th Cir. 2014) (explaining why testers have Article III standing and generally discussing value and importance of testers in enforcement of consumer protection and civil rights statutes).

20. When Plaintiff played the video, Defendant knowingly disclosed the title to Google, along with numerous identifiers that constitute PII. In other words, Defendant did exactly what the VPPA prohibits: it disclosed Plaintiff' video viewing habits to a third party in a manner that any ordinary person can understand Plaintiff's viewing habits.

21. Visitors would be shocked and appalled to know that Defendant secretly discloses to Google all of key data regarding a visitors' viewing habits.

22. Defendant's conduct is illegal, offensive, and contrary to visitor expectations.

## V. CLASS ALLEGATIONS

23. Plaintiff brings this action individually and on behalf of all others similarly situated (the "Class") defined as follows:

> **All persons in the United States who played video content on The Website and whose PII was disclosed by Defendant to any third party during the two years preceding the filing of this action (the "Class Period").**

24. **Numerosity (Fed. R. Civ. P. 23(a)(1)):** At this time, Plaintiff does not know the exact number of members of the aforementioned Class. However, given the popularity of Defendant's website, the number of persons within the Class is believed to be so numerous that joinder of all members is impractical.

25. **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2), 23(b)(3)):** There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual members of the Class include:

   a) whether Plaintiff and the Class are within the definition of the term, "consumer," used in the VPPA;

   b) whether Defendant collected Plaintiff's and the Class's PII;

   c) whether Defendant unlawfully disclosed and continues to disclose users' PII in violation of the VPPA;

   d) whether Defendant's disclosures were committed knowingly; and

   e) whether Defendant disclosed PII without consent.

26. **Typicality (Fed. R. Civ. P. 23(a)(3)):** Plaintiff's claims are typical of those of the Class because Plaintiff, like all members of the Class, used the Website to play videos, and had PII collected and disclosed by Defendant.

27. **Adequacy (Fed. R. Civ. P. 23(a)(4)):** Plaintiff has retained qualified and competent counsel who are highly experienced in complex consumer class action litigation. Moreover, Plaintiff is able to fairly and adequately represent and protect the interests of the Class.

28. **Superiority (Fed. R. Civ. P. 23(b)(3)):** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable.

## VI.   CAUSE OF ACTION

## VIOLATION OF THE VIDEO PRIVACY PROTECTION ACT

## 18 U.S.C. § 2710, *et seq.*

29. Defendant is a "video tape service provider" as defined by 18 U.S.C. § 2710(a)(4) (emphasis added). As noted above, the videos are integral to Defendant's business model, as Defendant uses the videos to collect and disclose viewers' PII so it can later retarget them for advertisements.

30. Plaintiff and members of the Class are "consumers" as set forth above under 18 U.S.C. § 2710(a)(1) (emphasis added).

31. Defendant disclosed to Google Plaintiff's and the Class members' personally identifiable information. Defendant utilized the Google Tracking Pixel to compel Plaintiff's web browser to transfer Plaintiff's identifying information, like their Google IDs, along with Plaintiff's event data, like the title of the videos viewed.

32. Plaintiff and the Class members played videos on the Website.

33. Defendant knowingly disclosed Plaintiff's and Class members' PII because it used that data to build audiences on Google and retarget them for its advertising.

34. Plaintiff and Class members did not provide Defendant with any form of consent—either written or otherwise—to disclose their PII to third parties.

35.  Defendant's disclosures were not made in the "ordinary course of business" as the term is defined by the VPPA because they were not necessary for "debt collection activities, order fulfillment, request processing, [or] transfer of ownership." 18 U.S.C. § 2710(a)(2).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks judgment against Defendant, individually and on behalf of all others similarly situated, as follows:

a.  For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as representative of the Class;

b.  For an order declaring that Defendant's conduct violates the VPPA;

c.  For an order finding in favor of Plaintiff and the Class on the cause of action asserted herein, including all available damages;

d.  For prejudgment interest on all amounts awarded;

e.  For injunctive relief to stop the illegal conduct;

f.  For an order awarding Plaintiff and the Class their reasonable attorneys' fees, expenses and costs of suit;

g.  For any and all other relief, at law or equity, that may be appropriate.

Dated:  May 26, 2023

PACIFIC TRIAL ATTORNEYS, APC

By: _____
Scott. J. Ferrell
Attorneys for Plaintiff